**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | |
|---|---|
| EDIE WALLACE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 11-1184 |
| ) | |
| HEARTLAND COMMUNITY COLLEGE, ) | |
| a body corporate and politic, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

NOW COMES Defendant, **Heartland Community College**, a body corporate and politic (the "College"), by and through its attorneys, Brown, Hay & Stephens, LLP, pursuant to Federal Rule of Civil Procedure 56 (Fed. R. Civ. P. 56) and Local Rule 7.1 (CDIL-LR 7.1), and as and for its Memorandum in Support of Motion for Summary Judgment states as follows:

**I.  INTRODUCTION**

Plaintiff Edie Wallace filed her Complaint in four counts on May 16, 2011.  In paragraphs 25-26 of Count III and paragraphs 17 and 23 of Count IV, Wallace alleges she was "forced to resign her employment with the College."  (See Complaint, Count III, ¶¶ 25-26; Count IV, ¶¶17, 23.)  The Complaint was served on the College's counsel, who agreed to accept service, on August 23, 2011.  This motion is therefore timely.

**II.  UNDISPUTED MATERIAL FACTS**

1. Wallace was employed as a tenured biology instructor at the College. (Complaint, ¶ 2.)

2. A Dismissal and Notice of Rights of Wallace's EEOC Charge No. 21B-2007-02141 was received by Wallace and the College.  (Complaint, ¶ 5; Affidavit of Debra Willsie, assistant to the College's counsel, attached hereto as Exhibit A and incorporated herein.)

3. Wallace's EEOC Charge No. 21B-2007-02141 (Illinois Department of Human Rights ("IDHR") Charge No. 2007SF3586) was appended to the Dismissal and Notice of Rights.  (Exhibit A.)

4. EEOC Charge No. 21B-2007-02141 contains no allegation of constructive discharge or forced resignation, and Wallace was still employed by the College on August 17, 2007, the date such charge was perfected.  (Exhibit A; see also Affidavit of Barbara Leathers, Executive Director of Human Resources for the College, attached hereto as Exhibit B and incorporated herein.)

5. A regular teaching load for a full-time tenured instructor at the College during the relevant period was 15 equated contact hours ("ECH") per semester.  (Exhibit B.)

6. In the 2007-2008 academic year Wallace increased her teaching load to 32 total ECH for the fall and spring semesters combined, with 1 hour of overload in each semester.  (*Id.*)

7. From the 2002-2003 through the 2005-2006 academic years Wallace's teaching load was 30 total ECH for the fall and spring semesters combined, with Wallace being allowed at her request to average that load with 1 hour carried from the fall to the spring semester.  (*Id.*)

8.  Wallace's teaching load for the 2006-2007 academic year was 30 total ECH for the fall and spring semesters combined, with no averaging from semester to semester. (*Id.*)

9.  Wallace sent a letter of resignation to the College's then President, Jon Astroth, on May 5, 2008, with an effective date of resignation at the end of that semester. (*Id.*)

10. The IDHR entered a Notice of Dismissal for Lack of Substantial Evidence on or about June 24, 2009. (*Id.*)

11. At no time in that year period did the College receive an amended EEOC charge from Wallace.

12. Subsequent to an agreed extension of time, Wallace, through her attorney, timely filed a Request for Review of the IDHR dismissal on August 17, 2009; the College timely filed a Response on September 28, 2009; Wallace timely filed a Reply on October 19, 2009; and the College timely filed a Surreply on or about October 22, 2009. (Exhibit A.)

13. The IDHR entered a Final Order sustaining the dismissal on October 12, 2010. (Exhibit A.)

### III. APPLICABLE LAW

**A.  Summary Judgment Standards**

"Summary judgment is appropriate where the evidence 'show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Fed. R. Civ. P. 56(c); *Brewer v. Bd. of Trustees of the Univ. of Ill.*, 479 F.3d 908, 914-915 (7th Cir. 2007) (citing *Kampmier v. Emeritus Corp.,* 472 F.3d

3

930, 936 (7th Cir. 2007)). "There is no genuine issue of material fact when no reasonable jury could find in favor of the nonmoving party." *Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295 (7th Cir. 2010) (citing *Brewer v. Bd. of Trustees of the Univ. of Ill.*, 479 F.3d 908, 915 (7th Cir. 2007)). Summary judgment is the "put up or shut up" moment in a lawsuit. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003).

The plaintiff must offer "something more than a mere scintilla of evidence, or some metaphysical doubt as to the material facts to survive summary judgment." *Natl. Inspection & Repairs, Inc. v. George S. May Intern. Co.*, 600 F.3d 878 (7th Cir. 2010) (citations omitted). "[M]ere conclusory allegations do not constitute evidence." *Montgomery v. American Airlines, Inc.*, 626 F.3d 382 (7th Cir. 2010). "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court is "not required to draw every conceivable inference from the record [in favor of the non-movant]-only those inferences that are reasonable." *Chmiel v. JC Penney Life Ins. Co.*, 158 F.3d 966, 968 (7th Cir. 1998) (citations omitted).

**B.     Allegations of Complaint and Underlying EEOC Charge**

It is well settled that a timely charge with the EEOC encompassing the acts complained of is a prerequisite for filing suit in federal court. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974). This arrangement places the EEOC (and in this case the IDHR) in an investigatory and conciliatory role and creates an opportunity for settlement and communication between the parties before they resort to trial *Id.* at 44. The EEOC charge also provides notice to the party against whom the charge has been

filed so that he or she may address the situation or at least have some warning of the conduct about which the employee is aggrieved. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992); *see also Teal v. Potter*, 559 F.3d 687 (7th Cir. 2009).

## IV.  ARGUMENT

**A.  Plaintiff cannot show that the underlying EEOC charge encompasses the allegations of constructive discharge as contained in Counts III and IV of her Complaint.**

Wallace did not allege constructive discharge in her August 17, 2007, charge filed with the IDHR and the EEOC and could not because she was still employed by the College. Approximately nine months later Wallace sent her letter of resignation to the president of the College on May 5, 2008, effective the end of the school year. At no time subsequent to her voluntary resignation did Wallace file an amended charge with the IDHR or the EEOC. Wallace's Notice of Rights letter from the EEOC has attached to it the August 17, 2007, charge. (Exhibit A.) The charge includes allegations of harassment based on disability and a failure to accommodate. (*Id.*) It includes no allegations of constructive discharge or forced resignation. Therefore, summary judgment is an appropriate disposition of Counts III and IV.

When a complaint is filed that contains allegations outside the scope of its underlying EEOC charge, those new allegations go unaddressed by the EEOC and leave the opposing party without notice of the conduct in question. Thus, because outlying allegations frustrate the purposes of the administrative exhaustion requirement, the scope of judicial proceedings arising from an EEOC charge is limited to what has been set forth in the charge. *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985); *Rush v. McDonald's*, 996 F.2d 1104, 1110 (7th Cir. 1992). "An aggrieved

employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination." *Conner v. Ill. Dept. of Natural Resources*, 413 F.3d 675, 680 (7th Cir. 2005) (quoting *Rush* at 1110.) According to the Seventh Circuit Court of Appeals, "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumvent the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely would an initial failure to file a timely EEOC charge." *Babrocky*, 773 F.2d at 863; *see also Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

Upon a reading of Wallace's EEOC charge and subsequent Complaint, it is clear that the Complaint is the first instance of any allegations of constructive discharge, and such allegations fall outside the ambit of the predicate EEOC charges of harassment based on disability harassment and failure to accommodate.  These allegations did not pass through the requisite phases of investigation and conciliation, and the College was not given notice of the allegations prior to the instant proceeding.

However, courts will permit an allegation that did not explicitly appear in the underlying EEOC charge "when it is clear that the charging party intended the agency to investigate the allegation."  *Cheek*, 31 F.3d at 502 (citing *Rush*, 966 F.2d 1104, 1110-1111).  In the instant case there is no indication that Wallace intended that the IDHR or the EEOC investigate any claim of constructive discharge or forced resignation.  This is evident from the argument and documents submitted with Wallace's Request for Review and her Reply to the College's Response to Request for Review.  One of those documents is a June 25, 2007, letter to the IDHR regarding the parameters of her

charge. There is no reference to constructive discharge or even a hint that she was considering resigning. (Exhibit A.) Wallace also attached her October 14, 2008, letter to Krista Sherrock, which is characterized by Wallace as a response "to comments made during the April 9, 2008, fact finding conference . . . ." (*Id.*) Even though Wallace had submitted her resignation five months earlier, she does not include any allegations of constructive discharge. (*Id.*) Neither does she include any such allegations in her "Chronology of HCC Events," which chronology ends at June 18, 2007. (*Id.*) Wallace characterized her chronology as complete, stating, "I have attached a complete chronology of events so each one can be put in its proper context." (*Id.*) While it appears that Wallace may not have been represented by counsel when she wrote the October 14, 2008, response, she was represented by counsel when she filed for an extension of the review period on August 12, 2009, and when the Request for Review was filed on September 9, 2009. (*Id.)* There is no hint of allegation or argument in any way relating to constructive discharge in the Request for Review. (*Id.*) The May 5, 2008, letter to Astroth from Wallace is included with the other attachments to her response, but there is no reference to it in her Request for Review. (*Id.*) Further, constructive discharge is not addressed in any way whatsoever in the Reply submitted by counsel on Wallace's behalf. (*Id.*) In short, there is no indication that Wallace intended that the IDHR or the EEOC investigate any allegations of constructive discharge. As stated, Wallace was represented by counsel at the fact-finding conference and during the entire review process. Wallace had 300 days to amend her charge or bring an additional charge to include constructive discharge or to draw the IDHR's attention to her alleged forced resignation. That was never done. Given these

circumstances it cannot be said to be "clear that the charging party intended the agency to investigate the allegation." *Cheek*, 31 F.3d at 502 (citing *Rush*, 966 F.2d 1104, 1110-1111).

B. **Plaintiff cannot show that the underlying EEOC charge encompasses the allegations of constructive discharge as contained in Counts III and IV of her Complaint.**

Likewise, summary judgment in the College's favor on Counts III and IV is appropriate because the allegations of constructive discharge bear no resemblance to the claims in her EEOC charge. Where an allegation in a complaint is "like or reasonably related" to the claims in the underlying EEOC charge, it is cognizable in federal court. *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976). In determining which allegations are "like or reasonably related" to EEOC charges, courts use a liberal standard and consult the factual narrative of the EEOC charge or other documentation provided with the charge. *Babrocky*, 773 F.2d at 864; *see also Rush*, 966 F.2d at 1110 (holding that a handwritten affidavit attached to the EEOC charge could be considered).

As stated, at no time after May 5, 2008, the date of her resignation, did Wallace file an amended charge or a new charge including constructive discharge. The factual narrative submitted to the IDHR on June 25, 2007, when Wallace apparently initiated her charge, does not include a claim of constructive discharge. And she failed to request or clearly indicate that she desired any investigation into such a claim during the 2009 review process.

The question then becomes whether constructive discharge is "like or reasonably related" to the claims in the underlying EEOC charge so that it is cognizable in this

8

court. *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976). The question of whether Wallace's constructive discharge claim was within the scope of her EEOC charge is a question of law. *Conner*, 413 F.3d at 680. On its face Wallace's charge does not allege constructive discharge. Neither does it allege an aggravated situation from which the Court could reasonably infer that the College created intolerable working conditions which compelled Wallace to retire. In fact, Wallace was still employed by the College at the time she initiated the underlying charge and stayed for another nine months. Nothing in Wallace's charge suggests in any way that she was being pressured to retire. Wallace determined the temporal parameters that were included in her charge, and it was her allegations that the harassment and failure to accommodate had end dates of May 30, 2007. Her "complete" chronology ends June 17, 2007. Therefore, there is nothing in the EEOC charge that would suggest that Wallace was facing outright termination or pressure to retire or that circumstances were so egregious on May 5, 2008, that she was forced to retire.

The Seventh Circuit has held that a constructive discharge claim is outside the scope of an EEOC investigation that could reasonably be expected to arise out of allegations of discrimination and harassment, as well as retaliation. *Herron v. DaimlerChrysler Corp.*, 388 F.3d 293, Note 2 (7th Cir. 2004). In *Herron* there was a four-month delay between the complainant's filing of his charge and his decision to leave, which the court specifically noted was inconsistent with a claim of constructive discharge. *Id.* Here, there was a nine-month delay between the filing of the charge and Wallace's decision to retire. As in *Herron*, this delay is inconsistent with the concept of constructive discharge. This is particularly so given the time constraints Wallace herself

9

set forth in her EEOC charge.  Wallace claims in Issues I and II that she was harassed from February 19, 2007, through May 30, 2007, based on her disability.  In Issues III through VI Wallace alleges that the College failed to accommodate her disability from May 23, 2007, through May 30, 2007, and her complete chronology ends on June 17, 2007.  The dates set out by Wallace precede her voluntary retirement by nearly a year.

Further, the IDHR had before it information that Wallace had increased her teaching load to 32 ECH for the 2007-2008 academic year.  (Exhibit B.)  Wallace had carried a teaching load of 30 ECH in each of the academic years from 2002-2003 through 2006-2007.  (*Id.*)  In fact, the College had allowed Wallace to average her load so that she actually had 16 ECH in each fall semester from 2002-2005, and 1 ECH was carried from the spring to the fall, giving her an actual 14 ECH in each spring.  (*Id.*)  A full-time, tenured instructor has a minimum teaching load of 15 ECH in each of the fall and spring semesters.  (*Id.*)  After years of averaging, Wallace decided to maximize her potential pension benefits by taking 1 ECH overload in each semester of her last academic year teaching at the College.  (*Id.*)  This completely voluntary increase is wholly inconsistent with any claim of constructive discharge Wallace now asserts.  Clearly there is nothing in the charge that would have apprised the investigative agency or the College that Wallace was also claiming a constructive discharge.

This Court has held that the underlying charge of discrimination may only support a constructive discharge claim in federal court when such a charge would have been included in the underlying "reasonable cause determination and conciliation proceedings."  *Dixon v. Americall Group, Inc.*, 390 F. Supp. 2d 788, 791 (C.D. Ill. 2005).  This Court in *Dixon* noted that the *Herron* case and several other circuit courts have

concluded that, when employees allege discrimination without referring to termination in the EEOC charge, they cannot later bring a constructive discharge claim in federal court. *Id.* (citing *Roxas v. Presentation College*, 90 F.3d 310, 318, Note 5 (8th Cir. 1996)); *Albano v. Schering-Plough Corp.*, 912 F.2d 384, 385 (9th Cir. 1990); and *Paris v. Southwestern Bell Telephone Co.*, 94 F. Appx. 810, 816 (10th Cir. 2004). *See also Powell v. Safer Found.*, 2010 WL 4481780 (N.D. Ill. 2010). The IDHR order makes it abundantly clear that neither constructive discharge nor the fact of Wallace's resignation was ever considered during the agency proceeding as there is no mention of it whatsoever.

Further, in *Powell* the complainant claimed discrimination and harassment created a hostile work environment that existed through December 2005. *Id.* at 2. Complainant resigned in August 2007. *Id.* The court noted that the "substance and timing of Powell's EEOC charges bode poorly for her submission that the EEO charges were broad enough to encompass a constructive discharge claim." *Id.* (citing *Herron*, 388 F.3d 293). As in *Powell*, Wallace herself limited the time period in her charge, and the investigation conducted by the IDHR did not go outside those parameters. Therefore, it cannot be said that the charge was broad enough to be related to constructive discharge.

Wallace's EEOC charge includes only claims of harassment based on disability and failure to accommodate, and Counts III and IV of her subsequent federal Complaint based on constructive discharge are not like or reasonably related to the allegations in her charge. The factual narrative contained in Wallace's charge provides no support for an allegation of constructive discharge, and a broad assertion of discrimination cannot

11

be said to encompass this untimely attempt to amend the underlying charge.

Nothing within or beyond the four corners of Wallace's EEOC charge indicated that she was complaining of constructive discharge, even when construed with the utmost liberality.  As stated, Wallace was still employed by the College when she filed her charge, and no amended charge was filed subsequent to her resignation, despite her representation by counsel.  Because Wallace failed to exhaust the administrative remedies in respect to this allegation, summary judgment in the College's favor on Counts III and IV claiming constructive discharge is appropriate.

WHEREFORE, Defendant, **Heartland Community College**, a body corporate and politic, respectfully requests this honorable Court enter an order granting summary judgment in its favor on Counts III and IV of Plaintiff's Complaint and granting such other and further relief is just and proper.

**Heartland Community College,** Defendant

By: **s/ Lorilea Buerkett**
Registration No. 6215820
**BROWN, HAY & STEPHENS, LLP**
205 S. Fifth Street, Suite 700
P.O. Box 2459
Springfield, IL  62705-2459
Phone:  (217) 544-8491
Fax:  (217) 544-9609
E-mail:  lbuerkett@bhslaw.com

**PROOF OF SERVICE**

  I hereby certify that on October 7, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

James P. Baker<br>
bschrader2@gmail.com

              s/ Lorilea Buerkett
              Registration No. 6215820
              **BROWN, HAY & STEPHENS, LLP**
              205 S. Fifth Street, Suite 700
              P.O. Box 2459
              Springfield, IL  62705-2459
              Phone:  (217) 544-8491
              Fax:  (217) 544-9609
              E-mail:  lbuerkett@bhslaw.com