## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| EDIE WALLACE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 11-cv-1184 |
| HEARTLAND COMMUNITY COLLEGE, | ) |
| Defendant. | ) |

## O R D E R & O P I N I O N

This matter is before the Court on Defendant's Motion for Summary Judgment as to Counts III and IV of Plaintiff's Complaint. (Doc. 4). For the reasons stated below, the Motion for Summary Judgment is granted.

### LEGAL STANDARD

Summary judgment should be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In ruling on a motion for summary judgment, the Court must view the evidence on record in the light most favorable to the non-moving party. *SMS Demag Aktiengesellschaft v. Material Sciences Corp.*, 565 F.3d 365, 368 (7th Cir. 2009). All inferences drawn from the facts must be construed in favor of the non-movant; however, the Court is not required to draw every conceivable inference from the record. *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). The Court draws only reasonable inferences. *Id.*

"Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are 'obliged in our adversary system to scour the record looking for factual disputes....'" *Greer v. Board of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001) (quoting *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1993)). Once the movant has met its burden of showing the Court that there are no genuine issues of material fact, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Tech. Group*, 258 F.3d 557, 563 (7th Cir. 2001) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). If the evidence on record could not lead a reasonable jury to find for the non-movant, then no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997). At the summary judgment stage, however, the court may not resolve issues of fact; disputed material facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

**RELEVANT FACTUAL BACKGROUND**[1]

Plaintiff was employed by Defendant as a tenured biology instructor until her resignation in May of 2008. Plaintiff alleges in her Complaint that she suffered from fibromyalgia and osteoarthritis, which caused constant physical pain, frequent

---

[1] These facts are drawn from Plaintiff's Complaint, Defendant's Statement of Undisputed Material Facts, which Plaintiff does not dispute, and Plaintiff's Additional Undisputed Material Facts. (Doc. 1; Doc. 5 at 1-3; Doc. 7 at 3-5; Doc. 9 at 2-3). All genuine disputes and reasonable inferences are taken in Plaintiff's favor, as noted above.

fatigue, and limited ability to walk and climb stairs. Plaintiff's pain was exacerbated by stressful situations. Plaintiff and other natural-sciences faculty used laboratory assistants to help set up and arrange materials for laboratory courses. Plaintiff provided her assistants with detailed instructions for each laboratory course. Beginning in 2005, and continuing regularly thereafter, Plaintiff's assistants failed to follow her detailed instructions for laboratory setup. The assistants' failure to follow instructions resulted in necessary equipment and materials being missing from the laboratory for Plaintiff's courses. In order to rectify this problem, Plaintiff was forced to walk some distance and climb stairs to obtain assistance in setting up for her courses, and was subjected to significant stress, which resulted in significant physical pain.

On multiple occasions between mid-February and late May of 2007, Plaintiff met with college administrators about the lab assistant problem, during which she explained the problem and how it was affecting her medical condition, and requested that Defendant intervene to correct the problem. Plaintiff alleges that Defendant ignored her requests and failed to address the problem.

On August 28, 2007, Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights ("IDHR") and the federal Equal Employment Opportunity Commission ("EEOC"). (Doc. 5, Ex. A-1). In that Charge, Plaintiff alleges that she is handicapped by fibromyalgia, which causes related symptoms of mental impairment, and osteoarthritis. She alleges that Defendant harassed her because of her handicaps between February 19, 2007 and May 30, 2007, and that this harassment took the form of her supervisor, on February 19, 2007, "referring to

3

past situations in which he interpreted [Plaintiff's] behavior as being a problem, telling [her] that [her] treatment of the lab assistant was an issue, and telling [her] again that other anonymous lab assistants had refused to work with [her]." Further, she alleges that her supervisor used her "symptoms of mental impairment as a reason for ignoring my complaint." (Doc. 5, Ex. A-1 at 2-3). Plaintiff also alleges that between May 27 and May 30, 2007, Defendant failed to accommodate her disabilities by providing additional lab assistance and a flexible work schedule. (Doc. 5, Ex. A-1 at 3-5). The IDHR dismissed Plaintiff's charge in June 2009, and following a review at Plaintiff's request, affirmed the dismissal in October 2010.

On May 5, 2008, Plaintiff sent a letter of resignation to Heartland Community College President Jon Astroth, effective at the end of that semester.

In her Complaint, filed with this Court on May 16, 2011, Plaintiff alleges that Defendant denied her requests for an accommodation of her handicaps between mid-February and late May of 2007 (Count I); that Defendant's failure to address Plaintiff's problems at work led to her suffering intense physical pain, which created a hostile work environment (Count II); that Defendant's failure to accommodate Plaintiff's request for accommodation resulted in her constructive discharge (Count III); and Defendant's failure to address Plaintiff's problems at work led to her suffering intense physical pain, which created a hostile work environment that resulted in her constructive discharge (Count IV).

## DISCUSSION

Defendant argues that summary judgment should be granted in its favor on Plaintiff's Counts III and IV, because they are based on a claim of constructive

discharge, which Plaintiff did not include in her August 17, 2007 charge of discrimination with the IDHR and EEOC. Plaintiff counters Defendant's Motion by arguing that her constructive discharge claims are so closely related to the claims made in the charge of discrimination that she can proceed with them; she alleges that her constructive discharge was merely an outgrowth of Defendant's actions that led to the claims of discrimination and failure to accommodate her disability.

A federal employment discrimination plaintiff generally is limited to pursuing the claims she made before the EEOC. *Teal v. Potter*, 559 F.3d 687, 691 (7th Cir. 2009) (citing *Cheek v. Western & Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)). This requirement's purposes are "to promote resolution of the dispute by settlement or conciliation and to ensure that the sued employers receive adequate notice of the charges against them." *Id*. Plaintiffs are also able, though, to pursue claims that are "like or reasonably related to the allegations of the [administrative] charge and growing out of such allegations.'" *Id*. at 691-92. (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (alteration in original)). This inquiry turns on whether "there is a reasonable relationship between the allegations in the charge and those in the complaint, and the claim in the complaint could reasonably be expected to be discovered in the course of the EEOC's investigation." *Id*. at 692 (citing *Cheek*, 31 F.3d at 500).

Plaintiff concedes that her charge of discrimination does not include a claim for constructive discharge, nor could it, as it was filed more than eight months before she tendered her resignation. However, she argues that it is "reasonably

related" to the content of the charge, because the discriminatory treatment alleged in the charge is what led to the retaliatory constructive discharge. On the other hand, Defendant asserts two bases for its argument that the constructive discharge claims should not be considered by the Court: (1) Plaintiff explicitly limited the time frame of her Charge of Discrimination to the period between February and May of 2007, indicating that she believed the discriminatory actions had ended after that point; and (2) her separation from Defendant's employment occurred nine months after she filed the Charge of Discrimination, which is too long for it to be "reasonably related." The Court, applying the standards noted above, agrees that the constructive discharge claims are not closely-enough related to the charges made before the IDHR and EEOC to allow Plaintiff to proceed with them in this suit.

As noted above, there are two issues underlying the analysis of whether a claim not included in an agency charge is cognizable by a court: (1) the existence of "a reasonable relationship between the allegations in the charge and those in the complaint," and (2) whether the agency's investigation could be reasonably expected to discover the excluded claim. *Teal*, 559 F.3d at 692 (citing *Cheek*, 31 F.3d at 500). Put another way, "[a]llegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Cheek*, 31 F.3d at 502 (citing *Rush*, 966 F.2d at 1110-11; *Box v. A & P Tea Co.*, 772 F.2d 1372, 1375 (7th Cir. 1985)). Though it may be arguable that because Plaintiff alleges the same problems cited in the charge to have caused the

6

later constructive discharge they are "reasonably related,"[2] it would not be reasonable to expect the agency to discover the May 2008 constructive discharge claim in the course of investigating the alleged discrimination.

The Court has reviewed Plaintiff's charge before the agencies, and the evidence cited by the parties. The charge explicitly limits the allegations of discrimination to actions during the period of February through May of 2007. (Doc. 5, Ex. A-1). This alone renders unreasonable any expectation that the agency would discover a discriminatory constructive discharge that allegedly occurred a year later. The charge's limited timeframe implies to the agency that Plaintiff believed the discriminatory conduct ended in May of 2007, and that it need look no further in investigating her claims.

Moreover, the IDHR did not complete its initial investigation of Plaintiff's charge until June 24, 2009, more than a year after her resignation, and Plaintiff makes no argument and cites no evidence that she sought to inform IDHR investigators that she considered the discrimination to have continued, or her May 2008 resignation to have been a discriminatory constructive discharge. Plaintiff even had the assistance of an attorney in seeking reconsideration of the IDHR's dismissal of her charge in August 2009 (a year and a half after her resignation), and failed to mention the alleged constructive discharge during that proceeding. *See*

---

[2]  Even this assumption is a tenuous one, as Plaintiff fails to explain the connection between the failure to accommodate in the spring of 2007 with the alleged constructive discharge in May of 2008 – significantly, there is no explanation of why Plaintiff felt forced to resign in 2008, while in 2007 she did not, nor the allegation of any specific incidents occurring in 2008.

*Rush*, 966 F.2d at 1112 ("not unreasonable to require some additional specificity or detail" in agency charge prepared with attorney's assistance).

Plaintiff cites to two unreported Northern District of Illinois cases in support of her argument. In *Nolan v. South Central Community Services, Inc.*, the court allowed a plaintiff to proceed with his claim of retaliatory constructive discharge, which he had not included in his EEOC charge, because it found that if the EEOC had investigated the charge, rather than just issuing a "right to sue" letter, "the issue of constructive discharge certainly would have come up in the conciliation process." 95 C 2328, 1996 WL 473662, *5 (N.D. Ill. Aug. 14, 1996). Because the EEOC would have become aware of the constructive discharge claim during an investigation, which would fulfill the conciliation purpose of the exhaustion requirement, it did not make sense to bar plaintiff's inclusion of that claim in the district court action. *Id*. Here, in contrast, the IDHR did conduct an extensive investigation, including reconsideration at Plaintiff's attorney's behest, and appears to have uncovered no claim or inkling that Plaintiff's resignation was involuntary. The Court here does not have to speculate about what the agency investigators "would have" discovered – Plaintiff does not point to any evidence that she revealed to the agency during the pendency of the investigation or reconsideration that she believed her resignation to have been a constructive discharge, which belies any argument that she reasonably expected or intended the agency to discover that

claim. Allowing her to proceed with it now would therefore undermine the notice and conciliation purposes of the exhaustion requirement.[3]

In *Howard v. Burlington Air Exp. Inc.*, the district court, while ultimately granting the defendant's motion for summary judgment on the merits, considered the plaintiff's constructive discharge claim though he did not include it in his EEOC charge. 93 C 7815, 1994 WL 722061 (N.D. Ill. 1994). The plaintiff filed an EEOC charge on September 18, 1991, alleging discrimination and retaliation relating to a previous EEOC charge; on February 4, 1992, he resigned as a result of an alleged constructive discharge due to retaliation. *Id.* at *1. The *Howard* court did not engage in an extensive analysis of the exhaustion issue, as it moved quickly to dispose of the merits of the plaintiff's claim, and its limited discussion does little other than recite the relevant caselaw. This makes it difficult to compare to the instant case, as there is no indication in the *Howard* opinion whether the plaintiff limited the time period of his EEOC retaliation charge in any way, as Plaintiff here did, or whether he repeatedly communicated with the EEOC during its investigation (assuming, which is also not clear, that it did an investigation) but failed to mention that he believed his resignation to have been a constructive discharge. These two considerations are key to the Court's determinations that Plaintiff (who was represented by an attorney for at least part of the investigation) did not intend the agency to investigate her claim of constructive discharge, and

---

[3]  Moreover, retaliation claims are treated more liberally than other types of claims – if an employer retaliates because of an earlier EEOC charge, that retaliation need not be cited to the EEOC in a second or amended charge because the retaliation claim necessarily grows out of the content of the earlier charge. *See McKenzie v. Illinois Dept. of Transp.*, 92 F.3d 473, 482-83 (7th Cir. 1996).

that it would have been unreasonable to expect the EEOC to discover her belief that her resignation was actually a constructive discharge.

Plaintiff does not assert that she ever mentioned the May 2008 resignation or her belief that it was a discriminatory constructive discharge to the agency during the entire pendency of its investigation, from August 2007 to October 2010; instead, her cited allegations to the agency explicitly limit the claims to February-May 2007. Thus, it is plain that she could not intend the agency to investigate a claim of constructive discharge occurring in May 2008, and, indeed, the agency does not appear to have investigated this alleged constructive discharge. Where a plaintiff explicitly limits the time frame of alleged discriminatory conduct while failing, though assisted by an attorney, to give the agency any hint that she believed the discrimination to have extended to an event a year after that time frame, it would be unreasonable to expect the agency to discover that discrimination, or to even infer that she intended the agency to discover it. Because she points to no evidence that the agency should reasonably have discovered her belief that she was constructively discharged, Plaintiff cannot pursue the allegation in this Court, and Defendant's instant Motion for Summary Judgment must be granted.

## Conclusion

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. 4) is GRANTED. Summary judgment is granted in Defendant's favor on Counts III and IV of Plaintiff's Complaint. This matter is REFERRED to Magistrate Judge Gorman for further pretrial proceedings.

IT IS SO ORDERED.

Entered this <u>28th</u> day of March, 2012.

                                                  s/ Joe B. McDade
                                                  JOE BILLY McDADE
                                     United States Senior District Judge